UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BEANSTALK INNOVATION, INC., | : | Case No. 1:17-cv-553 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| SRG TECHNOLOGY, LLC, | : | |
| Defendant. | : | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER (Doc. 5) AND
ISSUANCE OF TEMPORARY RESTRAINING ORDER**

This civil action is before the Court regarding Plaintiff Beanstalk Innovation, Inc.'s motion for temporary restraining order (Doc. 5) and the parties' responsive memoranda (Docs. 9, 13).

## I.  BACKGROUND

Plaintiff Beanstalk Innovation, Inc. is a corporation in the business of marketing and reselling various technology, content, and media products and services. On September 1, 2014, Plaintiff entered into a "strategic reseller agreement" with Defendant SRG Technology, LLC. (Doc. 1-1). Per the agreement, Plaintiff provided direct sales services for Defendant to assist in securing a contract between Defendant and the Hamilton County, Ohio Education Service Center ("HCESC"), which is not a party to this action. In exchange, Defendant was to pay Plaintiff a sales fee of $437,500,

1

in four equal installments of $109,375; each payment was due within 30 days of Defendant receiving a scheduled payment of license fees from HCESC. (*Id.* at 4).

Defendant made the first payment to Plaintiff on schedule, but failed to pay Plaintiff within 30 days of receiving its second license fee payment from HCESC. Plaintiff accordingly filed suit in this District on October 26, 2015, to recover the amount owed under the contract. *Beanstalk Innovation, Inc., v. SRG Technology, LLC,* Case No. 1:15-cv-695, Doc. 1 (S.D. Ohio Oct. 26, 2015).

On January 13, 2016, Plaintiff and Defendant entered into a settlement agreement. (Doc. 1-2). Under the terms of the Settlement Agreement, Defendant agreed to make the second installment payment, as well as additional amounts for interest and attorneys' fees, in two payments on dates specified in the Settlement Agreement. (*Id.* at 2). Defendant also agreed that, upon receipt of the forthcoming third and fourth licensing fee payments from HCESC, Defendant would hold the amount from each payment owed to Plaintiff in trust for Plaintiff's benefit until the money was transferred to Plaintiff. (*Id.* at 3).

As a result of the settlement, the prior case filed in this District was closed. Defendant made the second installment payments (modified by the settlement agreement) as required. (Doc. 1, at 4). Defendant also made the third of four installment payments as required and without issue. (*Id.*).

Defendant received funds from HCESC for its final licensing fee payment on April 19, 2017. (Doc. 9). Defendant admits that it did not hold that portion of the final payment owed to Plaintiff in trust as required by the settlement agreement; instead,

2

Defendant comingled the entirety of the final payment from HCESC with Defendant's general finds and spent the money received from HCESC on "operating expenses." (*Id.* at 2).

Plaintiff filed the instant complaint in this Court on August 22, 2017, advancing a breach of contract claim against Defendant for failing to abide by the settlement agreement from the previous case in this district. (Doc. 1). The same day, Plaintiff filed the motion for temporary restraining order currently before the Court. (Doc. 5). Plaintiff's motion requests that the Court enjoin Defendant from distributing the funds held in trust for Plaintiff except to the extent that said funds are paid to Plaintiff. (*Id.* at 10). In the alternative, Plaintiff requests that the Court impose a constructive trust against Defendant's assets to protect the *res* of the trust while litigation moves forward. (*Id.*).

## II.  STANDARD OF REVIEW

Per the original contract of the parties, as modified by the subsequent settlement agreement closing the previous case filed in this District, this breach of contract claim is governed by Florida law. (Doc. 1-1, at 3).

The factors to be evaluated in reviewing a motion for temporary restraining order under Florida law are identical to those evaluated in reviewing a motion for preliminary injunction. "The requirements for establishing the right to preliminary injunctive relief are: (a) the likelihood of irreparable harm, and the unavailability of an adequate remedy at law, (b) the substantial likelihood of success on the merits, (c) the threatened injury to petitioner outweighs any possible harm to the respondent, and, (d) the issuance of the injunction will not disserve the public interest." *Sanchez v. Solomon*, 508 So. 2d 1264,

1265 (Fla. 3d Dist. Ct. App. 1987). "The trial court may exercise broad discretion in granting, denying, dissolving, or modifying injunctions, and unless a clear abuse of discretion is demonstrated, this court will not disturb the trial court's decision." *Id.*

### III. ANALYSIS

#### A. Plaintiff has demonstrated the likelihood of irreparable harm and the unavailability of an adequate remedy at law

Typically, a temporary restraining order or preliminary injunction is an inappropriate remedy when the moving party seeks only monetary compensation, as the law provides an adequate remedy for monetary harm. *Bender v. CenTrust Mortg. Corp.*, 51 F.3d 1027, 1030 (11th Cir. 1995); *see also Landmark at Crescent Ridge LP v. Everest Financial, Inc.*, 219 So. 3d 218, 220 (Fla. 1st DCA 2017) ("irreparable harm is not established where the potential loss can be adequately compensated for by a monetary award"). This is the case even when, as in this case, a plaintiff claims that an injunction is necessary because a failure to quickly act could result in the plaintiff being permanently unable to recover the full amount owed. *See id.*; *see also IMG Fragrance Brands, LLC*, 2009 WL 10667869 at *2 (citing Florida precedent that the test is whether a judgment can be obtained in a proceeding at law, not whether that judgment would procure monetary compensation).

However, this case differs from a typical case alleging monetary harm because Plaintiff does not seek general damages for breach of contract but specific funds that Defendant agreed to hold in trust per the previous settlement agreement between the parties. The settlement agreement supports Plaintiff's claim:

4

> 4.
>
> …
>
> (b) SRGT **will hold in trust** for the benefit of Beanstalk that portion of the third and fourth payments received from HSESC that are owed to Beanstalk under the Agreement. On or before the third business day following the clearance of such funds in the accounts of SRGT, SRGT will pay to Beanstalk the portion from the third and fourth payments under the Agreement owed to Beanstalk as a result of such applicable third or fourth payment[.]

(Doc. 1-2, at 1–2 (emphasis added)). Florida courts have held that an injunction may be entered to prevent the dissolution of funds held in trust for the benefit of a plaintiff. *See Georgia Banking Co. v. GMC Lending*, 923 So. 2d 1224, 1225 (Fla. Dist. Ct. App 2006).

Defendant's response to Plaintiff's argument regarding injunctive relief for funds held in trust is that there are in fact no funds held in trust for the benefit of Plaintiff. Although the settlement agreement between the parties required Defendant to hold the last payment due to Plaintiff in trust, Defendant admits that it failed to do so. Instead, Defendant spent the money on "operating expenses." (Doc. 9, at 2). Defendant claims that "[t]he specific funds received from HCESC are no longer in any bank account belonging to (Defendant), nor were they used to buy or improve any property belonging to (Defendant)." (Doc. 9-1, at 2). Therefore, Defendant argues, Plaintiff cannot receive injunctive relief despite Florida courts allowing injunctive relief to prevent dissipation of trust funds because Defendant's actions have ensured that no such trust funds exist.

Adopting Defendant's argument would completely undermine the additional protections given to trust assets in the form of allowed injunctive relief. The Florida Supreme Court agrees with this assessment, and has held that a party cannot avoid its

obligations as the holder of funds in trust by comingling designated trust funds with general funds:

> General depositors also know, or should know, that by the commingling of trust funds with the general funds of the banking institution all the funds so commingled become impressed with the trust and the entire commingled fund is available to discharge the trust.

*Glidden v. Gutelius*, 119 So. 140, 145 (Fla. S. Ct. 1928). In this case, $109,375 of the money received from HCESC was money Defendant held in trust for the benefit of Plaintiff per the settlement agreement. Defendant's admission that it comingled those funds with its general funds and spent them does not prevent this Court from granting equitable relief that would otherwise be available to protect funds held in trust.

In its brief in opposition, Defendant cites to several Florida cases which stand for the proposition that injunctive relief cannot be used to freeze the general accounts of an entity or individual. The cases relied on by Defendant are distinguishable from the case before the Court as none of those cases involved an agreement in which a preexisting obligation to hold funds in trust was actually established. *See, e.g.*, *Stand Up for Animals, Inc. v. Monroe County*, 69 So. 3d 1011, 1013 (Fla. Dist. Ct. 2011) ("The County does not claim that SUFA's bank accounts are trust accounts or that all of the funds deposited in them belong to or are being held for the benefit of the County."); *Bank of America v. Bank of Salem*, 48 So. 3d 155, 158 (Fla. Dist. Ct. 2010) (finding that specific funds could not be traced back to the original loan made by bank); *Bender v. CenTrust Mort. Corp.*, 51 F.3d 1027, 1029 (11th Cir. 1995) (finding plaintiff failed to state a claim for constructive trust in his complaint); *Trend Setter Villas of Deer Creek v. Villas on the*

6

*Green, Inc.*, 569 So. 2d 766, 768 (Fla. Dist. Ct. 1990) (finding no connection between the specific trust funds and the general assets at issue); *Noventa Ocho LLC v. PBD Props. LLC*, 284 Fed. App'x 726, 728 (11th Cir. 2008) (finding that no specific trust funds were identified and the only relief requested was for damages); *M.I. Indus. USA, Inc. v. Attorneys' Title Ins. Fund, Inc.*, 6 So. 3d 627, 628 (Fla. Dist. Ct. 2009) (finding that a claim for money damages does not support injunctive relief).

In this case, Plaintiff is not asking for the Court to create a constructive trust over Defendant's general assets merely to assist in collecting on a traditional debt. The language of the settlement requiring Defendant to hold funds "in trust" for Plaintiff gives Plaintiff options for injunctive relief that would not otherwise exist. That phrase – "in trust" – is crucial to this Court's finding that Plaintiff does <u>not</u> have an adequate remedy at law in the absence of injunctive relief, and likely was negotiated by the parties into the settlement agreement for that reason. Florida law is clear: Defendant may be enjoined from disbursing funds that they were bound by agreement to hold in trust for Plaintiff's benefit, and the fact that those funds were comingled with Defendant's general assets means that a constructive trust over Defendant's general assets is warranted at this stage.

Accordingly, Plaintiff has demonstrated potential irreparable harm and the absence of an adequate remedy at law sufficient to justify the issuance of a temporary restraining order.

### B. Plaintiff is substantially likely to succeed on the merits

Based on the evidence provided to the Court, Plaintiff appears substantially likely to succeed on the merits of its breach of contract claim. The settlement agreement between the parties, that resolved the prior lawsuit filed in this District, states that upon receipt of the 3rd and 4th payments of licensing fees owed to Defendant by HCESC, Defendant would hold in trust that portion of the payment it owed to Plaintiff. (Doc. 1-2, at 3). Defendant would then pay to Plaintiff the trust funds within three business days of receiving payment from HCESC. (*Id.*). In a declaration included with Defendant's response to the current motion for temporary restraining order, Defendant's general counsel, Garry Johnson, states that upon receipt of the final payment from HCESC, Defendant comingled the payment with other operating funds and then used the entirety of that payment to pay various expenses. (Doc. 9-1, at 2). Defendant's actions, as admitted in a declaration from Defendant's general counsel, were in violation of the settlement agreement.

Defendant's declaration attached to its response to the motion for temporary restraining order indicates that Defendant "believes it has valid defenses for the failure to pay the funds and the amount thereof demanded by Plaintiff[.]" (*Id.*). However, there is no real indication as to what those defenses are. Defendant does suggest that an oral agreement was reached with Plaintiff to reduce the final payment owed to Plaintiff from $109,375 to $86,777. (*Id.*). Nevertheless, the truth remains that Defendant has admitted to paying <u>none</u> of the funds held in trust for Plaintiff's benefit to Plaintiff in accordance with the settlement agreement.

Accordingly, Plaintiff has demonstrated a high likelihood of success on the merits of its breach of contract claim, which supports Plaintiff's request for a temporary restraining order.

### C. The threatened injury to Plaintiff outweighs the possible harm to Defendant

Plaintiff's motion for temporary restraining order states that Plaintiff is requesting immediate injunctive relief due to a concern that the money held in trust for Plaintiff will be unrecoverable without an injunction. As discussed above, such a concern is typically insufficient to justify injunctive relief in a case seeking money damages, but injunctive relief is appropriate when funds specifically held (or to be held) in trust are at risk. *See supra* Part III.A. Defendant's admission that it has already comingled and spent the money supposed to be held in trust for Plaintiff supports Plaintiff's stated concerns, and the failure to impose a constructive trust over Defendant's remaining assets could prevent Plaintiff from being able to recover the trust funds owed. In contrast, the potential harm to Defendant is minimal; a temporary restraining order is short-term injunctive relief that is only intended to last until the parties can more thoroughly brief the Court as to a motion for preliminary injunction (or resolve the matter themselves). If Defendant is ultimately able to defeat the pending motion for preliminary injunction, it will once again regain control over all its assets.

Accordingly, this factor weighs in favor of granting a temporary restraining order.

### D. An injunction is in the public interest

Granting an injunction to protect trust assets owed to a person is in the public interest. Here, as discussed above, Plaintiff has demonstrated a high likelihood of success on the merits, and granting a temporary restraining order in this case will serve to ensure Defendant meets its contractual obligations under the settlement agreement. *See supra* Part III.B. The public interest is served through rulings that enforce contractual obligations. Defendant's response to the motion for temporary restraining order does not contest this factor.

Accordingly, Plaintiff has demonstrated that a temporary restraining order is in the public interest.

### E. Bond

Defendants have requested that, in the event the Court finds Plaintiff's motion for temporary restraining order to be meritorious, Plaintiff be required to post an adequate bond. Florida law limits damages a defendant can recover for an improper injunction to the amount of the bond posted with that injunction. *Parker Tampa Two, Inc. v. Somerset Development Corp.*, 544 So. 2d 1018, 1021 (Fla. 1989) ("We too adopt the majority view and limit liability to the bond amount where the injunction is obtained in good faith."). Accordingly, a court issuing an injunction must require the moving party to post an appropriate bond to compensate the non-moving party from any damages it may suffer should the injunction ultimately prove to be without merit. Fla. R. Civ. P. 1.610 ("No temporary injunction shall be entered unless a bond is given by the movant in an amount

10

the court deems proper, conditioned for the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined.").

Defendant asks that bond be valued at $109,375, the amount Plaintiff seeks to enjoin, plus an additional amount for prospective attorney's fees. This would far exceed any reasonable damages Defendant would suffer from being unnecessarily enjoined from using the disputed assets for the length of the temporary restraining order. Should the temporary restraining order prove meritless, Defendant will immediately regain the use of the $109,375 in dispute; to award Defendant an equal amount for what would ultimately be a minor, short term deprivation, plus attorney's fees, would grant Defendant an improper windfall.

Defendant will undoubtedly suffer some expense should the temporary restraining order granted by the Court prove to be ultimately meritless. The Court has not received detailed information from Defendant that would allow it to accurately assess that potential damage; given the expedited timeframe in which the parties were required to respond to the pending motion, this is understandable. Fortuitously, "should [the value of a bond initially set by the Court] prove insufficient or excessive, an affected party is free to move for modification." *Parker*, 544 So. 2d at 1021. At this time, given the amount in dispute and the relatively short duration of the temporary restraining order the Court shall impose, the Court finds that a bond of $1,000 is appropriate.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

A. A constructive trust is imposed over the $109,375 portion of the fourth payment Defendant received from HCESC and held for the benefit of Plaintiff.

B. Defendant shall not disburse or dissipate all or part of the $109,375 portion of the fourth payment Defendant received from HCESC and held for the benefit of Plaintiff, pending further Orders from this Court.

C. If Defendant has disbursed or dissipated all or part of the $109,375 portion of the fourth payment Defendant received from HCESC and held for the benefit of Plaintiff, then Defendant shall create or fund an account in in the amount of $109,375, and Paragraphs A and B set forth above in this Temporary Restraining Order shall apply with full and equal force to such account.

D. Within three business days of this Order, Defendant shall file a sworn affidavit attesting to and describing in detail Defendant's full compliance with this Temporary Restraining Order.

E. This Temporary Restraining Order shall be filed forthwith in the Clerk's office. It shall remain in effect for fourteen days from the date it was issued unless extended pursuant to Fed. R. Civ. P. 65(b).

F. This Temporary Restraining Order is entered to maintain the status quo and is without prejudice to the merits, the claims, or defenses which have been or may be asserted in this litigation.

G. Within three business days of this Order, Plaintiff shall post with the Clerk of Court a bond in the amount of $1,000.00.

H. The Court shall retain jurisdiction of this action for the purpose of enforcing this Temporary Restraining Order.

**IT IS SO ORDERED.**

Date: 8/31/17

_____
Timothy S. Black
United States District Judge